UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

XEROX CORPORATION,

                           Plaintiff,

                                                                                               <u>DECISION AND ORDER</u>

                                                                                                16-CV-6063L

                           v.

RP DIGITAL SERVICES, INC.,
ULTRAGRAPHICS, INC.,
a/k/a John T. Crossley, Inc.,

                           Defendants.
_____

## INTRODUCTION

Plaintiff Xerox Corporation ("Xerox") commenced this action for breach of contract against defendant RP Digital Services, Inc. ("RP") and Ultragraphics, Inc., a/k/a John T. Crossley Inc. ("Ultragraphics") (collectively "defendants"). Xerox seeks a money judgment against the defendants for failure to pay monies due pursuant to a Purchase Agreement and equipment Finance Lease (Dkt. #1). Defendants assert counterclaims against Xerox for breach of contract and lost profits. (Dkt. #8). Familiarity with the underlying facts is presumed.

Xerox now moves for summary judgment on both of the counts contained in the Complaint (Dkt. #1) – breach of a Purchase Agreement by the defendants, and breach of the Finance Lease by Ultragraphics – pursuant to Fed. R. Civ. P. 56. (Dkt. #11). For the reasons set forth below, that motion is granted.

# FACTUAL BACKGROUND

## I. The Purchase Agreement

On September 28, 2010, RP executed a Purchase Agreement for a D242 Printer with Xerox. Pursuant to the Purchase Agreement, RP agreed to make monthly payments to Xerox based on the number of prints produced by the printer. The Purchase agreement provides that, in the event of default by RP, Xerox may cease providing maintenance services on the printer and may require immediate payment as liquidated damages for all amounts due, plus interest, and any costs and attorneys' fees incurred by Xerox in attempting to enforce the Purchase Agreement.

## II. The Finance Lease

On January 18, 2012, Ultragraphics executed a finance lease agreement ("Finance Lease") with Xerox. Pursuant to the Finance Lease, Ultragraphics leased a X770 printer and agreed to make specified monthly minimum payments, in addition to monthly payments during the term for print charges, calculated with reference to the number of prints produced by the printer, both for a term of 60 months. The Finance Lease provided that if Xerox was unable to maintain the printer in accordance with the agreement, Ultragraphics' exclusive remedy would be for Xerox to provide it with an identical, or comparable, printer. The Finance Lease also stated that upon default by Ultragraphics, Xerox could, inter alia, remove the leased equipment, cease providing maintenance services, and require immediate payment as liquidated damages of all amounts then due, plus interest, and demand any remaining payments due for the remainder of the Finance Lease term.

Xerox commenced the instant action on February 3, 2016, claiming that defendants had breached the Purchase Agreement and Lease Agreement by failing to make the agreed-upon payments. Defendants answered the complaint, denying the bulk of Xerox's allegations and asserting counterclaims for breach of the Lease Agreement based on Xerox's alleged failure to provide equipment without defects and in good working order, and the lost profits that ensued.

Xerox now moves for summary judgment on both of its causes of action, and seeks damages in the amount of $3,237.80 plus costs and attorneys' fees on Count 1 (breach of the Purchase Agreement) and $83,618.76, plus costs and attorneys' fees, on Count 2 (breach of the Finance Lease). For the reasons that follow, Xerox's motion (Dkt. #11) is granted, and Xerox is awarded damages on Count 1 in the amount of $3,361.44, and on Count 2 in an amount to be determined.

## DISCUSSION

### I.   Standard on a Motion for Summary Judgment

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court's role in determining a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 88 (1986)

**II.     Count 1: Breach of the Purchase Agreement**

It is undisputed that Xerox submitted monthly invoices to defendants for payments due under the Purchase Agreement for three years, which were paid without incident. However, beginning in June 2014 and continuing through October 2014, defendants ceased making payments on outstanding invoices. Pointing to the Purchase Agreement's provision that in the event of default by RP, "all amounts then due" are owed, Xerox requests judgment in the amount of $3,237.80, the total amount due on the outstanding invoices, plus unspecified costs and attorneys' fees.

RP offers no arguments or evidence to refute Xerox's claims related to the Purchase Agreement and the Model D242 printer to which it pertained, and does not raise any questions of fact with respect to its default on payments under the Purchase Agreement. I therefore find that Xerox is entitled to summary judgment on its claim that RP breached the terms of the Purchase Agreement.

**III.    Count 2: Breach of the Finance Lease**

It is undisputed that the Finance Lease identifies itself as a "finance lease" pursuant to Article 2A of the Uniform Commercial Code, under which Ultragraphics waived all "rights and remedies as a lessee under Article 2A." (Dkt. #11-2, Exh. C). It is further undisputed that in or about June 2014, after repeatedly informing Xerox of ongoing technical difficulties and performance deficiencies associated with the X770 printer, Ultragraphics ceased making payments pursuant to the Finance Lease and requested that Xerox take back the printer, which Xerox eventually did.

Relying on the Finance Lease's provision that Ultragraphics' obligation to make all payments is "not subject to delay, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever, irrespective of Xerox's performance of its obligations hereunder," Xerox demands full payment of the outstanding balance of $83,618.76, plus costs and attorneys' fees. Xerox contends that this amount incorporates all applicable reductions under the Finance Lease, including, for example, a credit for the fair market value of the returned equipment.

Defendants' affidavits in opposition generally establish that the Model D770 printer to which the Finance Lease pertained was plagued with ongoing performance issues, which defendants contend caused damages in the form of lost profits. Defendants also assert that prior to their execution of the Finance Lease, Xerox made multiple false and fraudulent statements about the performance capabilities of the D770 printer, but for which defendants would not have entered into the Finance Lease.

Defendants' assertions that Xerox breached the Finance Lease by providing defective equipment, despite extra-contractual assurances that the printer it was providing was fit for a particular purpose, are expressly waived by the clear terms of the Finance Lease, which provides that the "obligation to make all payments, and to pay any other amounts due or to become due, is absolute and unconditional, and not subject to delay, reduction, set-off, defense, counterclaim or recoupment for any reason whatsoever, irrespective of Xerox's performance of its obligations hereunder . . . Xerox disclaims the implied warrant[y of] fitness for a particular purpose . . ." (Dkt. #11-2 at 24). A contractual duty to make payments regardless of the other party's performance, commonly known as a "hell or high water" clause, is typically enforceable. *See Xerox Corp. v. Graphic Management Servs., Inc.*, 959 F. Supp. 2d 311, 318 (W.D.N.Y. 2013)

5

(granting summary judgment to Xerox in an action alleging breach of a finance lease virtually identical to the one presented here, and holding that defendants' claims of fraudulent inducement and negligent misrepresentation are insufficient to overcome the clear language of the "hell or high water" clause).

Furthermore, although defendants argue that the instant motion is premature (and speculate that the Finance Lease is unenforceable)[1] because no discovery has taken place, where, as here, the parties' claims are governed by a clear and unambiguous contract with a merger clause specifying that it "constitutes the entire agreement as to its subject matter, supersedes all prior oral and written agreements" (Dkt. #11-2 at 25), and the breach of which is not in dispute, "the Court need only look to the plain language of the lease[] to decide" whether summary judgment is appropriate. *Id*., 959 F. Supp. 2d at 319 ("[w]hile a fraudulent inducement claim would not be foreclosed by a boilerplate merger clause" by itself, the combination of "language [that] is sufficiently specific as to [defendant's] waiver of defenses and counter claims and the prohibition of relying on prior statements" precludes a defendant from claiming fraudulent inducement or negligent misrepresentation).  I therefore find that Xerox is entitled to summary judgment on its claim that Ultragraphics breached the Finance Lease.

### IV. Damages

Xerox seeks summary judgment on the issue of damages relating to defendants' defaults under the Purchase Agreement and Finance Lease.  Defendants argue that Xerox has failed to

---

1 To the extent defendants argue that the Finance Lease's limitation of liability terms are unconscionable because the Finance Lease "fails of its essential purpose" by leaving plaintiff "with no remedy at all" in the event of Xerox's default (*Xerox Corp.*, 959 F. Supp. 2d at 320), it is undisputed that the Finance Lease's unambiguous terms did supply plaintiff with a remedy: if plaintiff was "not totally satisfied," Xerox promised to, at plaintiff's request and without charge, provide plaintiff with replacement equipment, in the form of the same model printer, or one with "comparable features and capabilities." (Dkt. #11-2 at 23). It does not appear that the defendants attempted to invoke this remedy.

properly mitigate its damages. However, where, as here, a contract contains a valid liquidated damages provision, "mitigation of damages is not relevant." *Xerox*, 959 F. Supp. 2d at 321.

The Court does, however, concur with defendants' contention that Xerox's damages calculations with respect to Count 2 require further specification and support. Xerox has submitted copies of the invoices at issue, but has not provided a full explanation of its damages calculations, including but not limited to its determination of the fair market value of the returned X770 printer at the time Ultragraphics requested that Xerox reclaim it. Accordingly, additional discovery and supplemental submissions will be required in order for the Court to properly assess damages on Count 2.

## CONCLUSION

Plaintiff's motion for summary judgment (Dkt. #11) is granted. Xerox is awarded damages on Count 1 (breach of the Purchase Agreement) in the amount of $3,237.80 (the principal amount of the unpaid invoices), plus interest at the rate of 1.5% per month from August 1, 2014 (a "reasonable intermediate date" with respect to the accrual of the claims), to the date of entry of this Order. *See e.g., Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998) (where contractual damages arose on many occasions over time, Court may opt to fix a "reasonable intermediate date" from which to calculate prejudgment interest). Such interest adds up to $123.64, for a total compensatory damages figure of $3,361.44 on Count 1.

The Court likewise grants summary judgment to plaintiff on Count 2, in an amount to be determined. The Court will grant defendants' request for discovery on the issue of damages solely with respect to Count 2 (the Finance Lease), including but not limited to determination of the fair market value of the returned X770 printer at the time Ultragraphics requested that Xerox

reclaim it.  Such discovery is to be completed within four (4) months of the entry of this Order. Within thirty (30) days thereafter, plaintiff is directed to file affidavits, exhibits, and such other proof in admissible form as is appropriate to explain and support its damages calculations for Count 2, and its request for an award of costs and attorney fees.  Defendants are directed to file their response, if any, within twenty (20) days of the filing of plaintiff's submissions.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 8, 2017.